| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date and Time:<br>December 17, 2020 at 2:00 p.m. |

-----------------------------------------------------------x

In re:                                              Chapter 11

381 Broadway Realty Corp.,                          Case No. 20-12605 (MG)

                              Debtor.

-----------------------------------------------------------x

**DEBTOR'S COMBINED MEMORANDUIM OF LAW IN OPPOSITION
TO UNITED STATES TRUSTEE'S MOTION TO DISMISS CHAPTER 11
CASE, OR, ALTERNATIVELY, DIRECT THE APPOINTMENT OF
AN OPERATING TRUSTEE, AND IN FURTHER SUPPORT OF
DEBTOR'S MOTION TO EXCUSE TURNOVER OF THE PROPERTY**

This Omnibus Memorandum of Law is respectfully submitted on behalf of 381 Broadway Realty Corp. (the "Debtor") and Alan Tantleff (the "Receiver")[1] (i) in opposition of the motion of the Office of the U.S. Trustee ("UST") to dismiss the Chapter 11 case pursuant to 11 U.S.C. §1112(b)(1), or, alternatively, appoint an Operating Trustee pursuant to 11 U.S.C. §1104 (ECF #12) (the "Dismissal Motion"), and (ii) in response to the Objection filed by the UST ( the "Objection") (ECF #11) to the Debtor's motion to excuse the Receiver from complying with the turnover provisions of the Bankruptcy Code (ECF #3) (the "Omnibus Motion"). Because the issues raised in the Dismissal Motion and Objection mirror each other, the Debtor has taken the liberty of filing a combined Memorandum of Law. For all of the reasons set forth herein, the Dismissal Motion should be denied and the Objection to the continuation of the receivership should be overruled.

---

[1] All terms previously defined in the Debtor's Motion to excuse the Receiver from complying with turnover provisions pursuant to 11 U.S.C. §543(d) shall have the same meaning for purposes of this Memorandum.

1

**Preliminary Statement**

Despite a clear mandate from the foreclosure court that the Receiver was expressly authorized to commence a bankruptcy case to preserve the Property, the UST has injected itself into this case on policy grounds. Selectively reading the State Court Order appointing the Receiver, the UST has moved to dismiss the case or appoint a Chapter 11 trustee, contending that the bankruptcy case was filed without proper authority. Outside of challenging the Receiver's authority, however, the UST, makes no effort to establish the traditional grounds under 11 U.S.C. §1104(a) of fraud, dishonesty, incompetence, or gross mismanagement. Of course, the Receiver is not guilty of any of the foregoing, and was installed to remedy the dereliction of his predecessor.

Substantively, the UST's analysis suffers from a case of tunnel vision. The UST relies on easily distinguishable authorities in which bankruptcy cases were dismissed because they were filed in violation of the debtor's charter or operating agreement, including this Court's decision in *In re Pasta Bar By Scotto II, LLC*, No. 15-12766 (MG), 2015 WL 7307246 (Bankr. S.D.N.Y. Nov. 19, 2015). *Pasta Bar*, however, does not arise in the context of Section 543, and is factually inapposite.

Moreover, the Dismissal Motion attempts to minimize direct Second Circuit case law sustaining the authority of a receiver to commence a bankruptcy case. The Second Circuit decisions in this area, however, are virtually on point. In *In re Bayou Group LLC*, 564 F.3d 541 (2d Cir. 2009) ("*Bayou Group"),* the Circuit Court sustained denial of a similar motion brought by the UST to displace a receiver because of a purported "management vacuum". The Court held that the a pre-petition receiver could wear two hats – one as a custodian and one as a manager – depending on the terms of the order of appointment.

The *Bayou Group* decision was followed in *S.E.C. v. Byers*, 609 F.3d 87, 93 (2d Cir. 2010), which held that a mandate empowering a receiver to manage and control an inquiry into a fraudulent enterprise resulted in "the receiver automatically becom[ing] the debtor-in-possession by operation of law."  Given the clear import of these decisions, to relegate these authorities to passing footnotes undermines the UST's overall legal analysis.

### Background Facts

Factually, there could not be a more solid basis for excusing a turnover.  To begin with, the Property went into receivership because of health and safety violations arising from the Debtor's owners conducting public events in contravention of the certificate of occupancy and without proper insurance.  After the commencement of foreclosure proceedings in 2018, the Initial Receiver (Peter Hanschke) unfortunately proved to be an unmitigated disaster due to neglect and mismanagement.  Mr. Hanschke was removed by Order of the State Court, and the current Receiver was installed on October 21, 2020 due to his management expertise.  The Property itself is currently vacant of all office tenants and has limited income from the one or two remaining retail tenants.  Given the diminished cash flow, the Property can ill afford the expense of the Chapter 11 trusteeship.

The decision of the State Court to authorize a Chapter 11 filing was also motivated by practical concerns.  In a candid assessment of today's Covid-19 environment, the foreclosure court recognized that Chapter 11 (replete with functioning sales procedures) provides a better option than the pandemic ravaged state court foreclosure process.  Yet, the dramatic impact of the pandemic is never once mentioned in the UST's Dismissal Motion or Objections, even though it was the guiding force behind the foreclosure court's decision to authorize the bankruptcy filing.  This is not to suggest that Covid-19 justifies re-writing the Bankruptcy Code, but it certainly justifies using bankruptcy to its permissible limits without hesitation.

**Procedural History**

The Debtor's sole asset is the Property at 381 Broadway. The senior mortgagee (381 Broadway Lender LLC) commenced a foreclosure action on June 15, 2018. A judgment of foreclosure fixing the Lender's claim in the sum of approximately $20 million was entered just before start of the pandemic on March 16, 2020. Within a week's time, by late March, the state courts were closed to all commercial and foreclosure filings. To this very day, there still remains a suspension of foreclosure sales.

The Lender moved for the appointment of a receiver on November 8, 2018, based upon allegations of misconduct by the Debtor's principal, Gary Tse, involving diversion of rents and conducting large parties without proper permits. The Initial Receiver (Peter Hanschke) was subsequently appointed on March 20, 2019, but did not account or collect rents, and let the Property further deteriorate. As a result, the state court had little choice except to remove Mr. Hanschke pursuant to written decision dated September 24, 2020. Mr. Tantleff was thereafter appointed pursuant to Order entered October 21, 2020.

Contrary to the UST's characterization, the order appointing Mr. Tantleff not only authorizes the bankruptcy filing, but also provides requisite management authority to prosecute the Chapter 11 case, based on the authority conferred on Mr. Tankleff "to take all necessary steps to resolve any such bankruptcy proceeding". It is illogical to think that State Court Justice Gerald Lebovits would authorize a bankruptcy filing by the Receiver, and not confer authority upon him to see the bankruptcy come to a conclusion. Any doubt favors the Receiver since the Order further provides that, should it be necessary, additional instructions and powers may be sought:

> ORDERED, that the receiver or any other party to this action may, at any time, upon proper and sufficient notice to all parties who have appeared herein, apply to this Court for instructions or additional powers whenever

4

> such instructions or additional powers shall be deemed necessary in order to enable the receiver to perform properly and legally the duties of his office as receiver . . . .

### Argument

### Point I
### The UST Motion is Miscast and Should be Denied

**A.    The Receiver was Authorized to File the Chapter 11 Case**

The UST contends that the Chapter 11 case was commenced without authority. In support of this position, the UST misreads the State Court Order appointing Mr. Tantleff, mischaracterizing the mandate as a "vague provision" that does not authorize the Receiver to displace the Debtor's management. The UST is wrong on all counts.

The question of the authority of the signatory of a bankruptcy petition is, as the UST acknowledges, an issue that turns on state law. As this Court previously explained in *Pasta Bar* (albeit in a different context):

> The Bankruptcy Code does not establish express rules relating to authority to file a voluntary petition for relief. In order to determine authority to file, courts initially look to the state law governing the entity.

*In re Pasta Bar By Scotto II, LLC, supra*, No. 15-12766 (MG), 2015 WL 7307246, at *3. The UST cites a series of unremarkable cases holding that under New York law, "[t]he court that appoints the receiver determined the scope of that receiver's authority." *Fed. Home Loan Mortg. Corp. v. Tsinos*, 854 F.Supp. 113, 115 (E.D.N.Y. 1994). *See also, Jolly v. Pittore*, 170 B.R. 793, 797 (S.D.N.Y. 1994) ["The receiver does not have the power, at least without special order of the court, to institute bankruptcy proceedings"]. Far from barring the instant Chapter 11 filing, these cases stand for the proposition that, if authorized to do so by the appointing court, a receiver can, in fact, file a bankruptcy petition. *See, In re 245 Associates, LLC,* 188 B.R. 743 (Bankr. S.D.N.Y.

5

1995); *In re Uno Broadcasting Corp.*, 167 B.R. 189 (Bankr. D.Ariz. 1994; *In re Posadas Assocs.,* 127 B.R. 278 [(Bankr. D.N.M. 1991).

Here, the UST parses words when it argues that the Receiver is limited to an *in rem* role over the Property, and was not granted *in personam* rights to manage the Debtor. This elevates form over substance. To begin with, the UST truncates the operative paragraph, and does not focus on the fact that the Receiver was authorized not only to "place the Property in bankruptcy", but also "to take all necessary steps to resolve any such bankruptcy proceeding". This additional language of "taking necessary steps" confirms the intent of the foreclosure court that the Receiver was given managerial control. Had the State Court not intended the Receiver to proceed under Chapter 11 and pursue a sale, the Order could have simply directed the filing of a Chapter 7 petition and ended there. Instead, the Court granted broad powers of the Receiver to not only administer the Property and operate the Debtor's business, but also to resolve the ensuing bankruptcy case.

**B.    There is No Legal Bar to the Receiver Acting as a Debtor-in-Possession**

Alternatively the Trustee contends that, even if the bankruptcy filing is upheld, the Receiver should not be excused from turning over the Property under 11 U.S.C. §543d), arguing that the Receiver cannot act as a debtor-in-possession. The primary support cited for this proposition is *In re 400 Madison Ave. Ltd. P'ship,* 213 B.R. 888 (Bankr. S.D.N.Y. 1997), wherein former Judge Beatty held that the employment of counsel by a receiver under Section 543(d) was not governed by Section 327. Ironically, Judge Beatty penned the decision because she was concerned that the UST would not relent on an objection to the retention of counsel by the receiver who were owed pre-petition fees.

In *dicta*, Judge Beatty went a step further and stated that she did not believe that a receiver could ever be an operating trustee or debtor-in-possession. This issue, however, was not actually presented in *400 Madison*.

Nevertheless, Judge Beatty also acknowledged that she was taking a position that had been rejected by the Hon. Stuart Bernstein in *In re 245 Associates, LLC, supra,*. Although the UST does not discuss *245 Associates, supra,* Judge Bernstein previously ruled that Section 327 applies to a receiver's counsel, based on the receiver's status as a *de facto* trustee:

> Once the bankruptcy court continues the receivership under section 543(d)(1), the receiver becomes the functional equivalent of a trustee, *In re Uno Broadcasting Corp.,* 167 B.R. [189,] 201 [(Bankr. D.Ariz. 1994)], and owes a trustee's fiduciary duties to all creditors, and assuming solvency, to the debtor's equity security holders. *Id.; In re Posadas Assocs.,* 127 B.R. [278,] 281 [(Bankr. D.N.M. 1991)].

*Id.*, at 750.

If Judge Bernstein's decision is not sufficient to overcome the UST's Objection, then surely the Circuit Court of Appeals decisions in *Bayou Group* and *Byers* are dispositive. Specifically, in rejecting the UST's policy arguments, the Second Circuit in *Bayou Group* recognized the power of a receiver to act as a debtor-in-possession. Noting that the appointment of an operating trustee is an "extraordinary remedy" and that the standard is "very high" [*Id., at 546]*, the Circuit Court rejected the UST's contention that, once the Chapter 11 was filed, the custodial role ended. Rather, the Court found that the underlying order of appointment contemplated both receiver and managerial powers, allowing the receiver to continue as manager after the Chapter 11 filing. *Id.* at 548.

Also of importance in *Bayou Group* was the fact that the test of the appointment of an operating trustee is the "interests of creditors". There, the Committee opposed the UST's motion, and no other creditor joined it, which factored heavily with the Court. Here, the Lender

7

supports retaining the Receiver in place, and no other creditor has come forward to join in the UST's motion. Here, the Lender is intending to file a joinder to this Opposition to the Dismissal Motion by separate submission.

The Second Circuit reaffirmed its holding in *Bayou Group* in 2010, again upholding a District Court order appointing a receiver with power to file a Chapter 11 case, stating:

> We agree with the district court that nothing in its order conflicts with the Bankruptcy Code. The order merely acknowledges that the receiver automatically becomes debtor-in-possession by operation of law. Moreover, the receiver's status can be challenged pursuant to 11 U.S.C. § 543, or the parties could move to appoint a trustee pursuant to 11 U.S.C. § 1104. *See, e.g., In re Bayou Group LLC,* 363 B.R. 674, 686 (S.D.N.Y.2007) (providing that after a bankruptcy petition is filed, the receiver's role as receiver terminated, but that his role as manager of the bankrupt entities would continue, and the "management of a bankrupt entity that files in Chapter 11 is automatically authorized to act as the debtor-in-possession, since under the Bankruptcy Code, the term 'debtor-in-possession' quite simply 'means debtor'"). There is no reason a district court cannot, pre-petition, appoint a manager for the entities, and there is nothing in the Bankruptcy Code that prevents that manager from continuing after the bankruptcy filing, subject to challenge by others.

*S.E.C. v. Byers, supra*, 609 F.3d at 93.

Here, the Order appointing Mr. Tantleff contains sufficient language conferring requisite managerial authority on him. After all, Mr. Tantleff came into the picture because of lapsed management by the Initial Receiver, and was selected because of his real estate experience and acumen. That the Initial Receiver, Peter Hanschker, was a lawyer and Mr. Tantleff is a professional real estate manager speaks volumes that the State Court envisioned Mr. Tantleff would continue to have control over the Debtor in bankruptcy.[2]

However, to avoid any question regarding the authority of the Receiver going forward, the Omnibus Motion also seeks to designate the Receiver to perform all of the acts required by

---

[2] To the extent necessary, the Receiver reserves the right to accept the Supreme Court's invitation to return "or instructions or additional powers" before any final determination on the Dismissal Motion is made.

8

the Debtor, pursuant to Bankruptcy Rule 9001(5). This designation was intended to head-off the very type of issues being raised by the UST. *See, In re Glob. Grounds Greenery, LLC*, 405 B.R. 659, 661 (Bankr. D. Ariz. 2009) ["After evidentiary hearing, this Court excused turnover by the Receiver pursuant to Bankruptcy Code § 543(d)(1), but simultaneously ordered that Receiver Davis be designated as the representative of the Debtors' estates pursuant to Bankruptcy Rule 9001(5) and that he have all the rights, powers and obligations of a debtor in possession pursuant to Bankruptcy Code § 1107(a). One of the express reasons for this ruling was because a receiver without the powers of a debtor in possession may not be able to assert preference and fraudulent transfer causes of action . . ."].

In both the Dismissal Motion and the Objection, the UST argues that the Receiver has somehow abdicated his power to act as a debtor-in-possession because, although the Receiver discusses selling the Property and filing a plan in the Local Rule 1007-2 Affidavit, the Receiver does not specifically state an intention to investigate potential claims and avoidance actions against the Debtor's principal, Gary Tse or the Initial Receiver, or to examine claims.[3]

The Local Rule 1007-2 Affidavit is intended as an introductory statement relating to the case. The fact that a particular issue is not specifically mentioned in the Affidavit is of no moment, and certainly does not preclude or limit an investigation. At any rate, the schedules, signed by Mr. Tantleff, list litigation claims against the Initial Receiver and Gary Tse, so the matter is clearly on his radar. (*See,* ECF #1).

---

[3] The UST also insinuates that the Receiver omitted to propose an examination into the Lender's claim because the Receiver is somehow beholden to the Lender. [Dismissal Motion at p. 15] First, the law is clear that "the receiver is not an agent of the plaintiff by is considered an arm of the court." *Federal Home Loan Mortg. Corp. v. Tsinos,* 854 F.Supp. 113, 115 (E.D.N.Y. 1994). Second, the claim of the Lender has already been fixed by final judgment of the Supreme Court and is insulated from challenge in the Bankruptcy Court under *Rooker/Feldman*.

**Conclusion**

To be sure, the UST plays a prominent role in Chapter 11 proceedings, and its views are well-regarded. However, questions regarding the authority of a receiver to function as a debtor-in-possession have been settled at the Circuit level for more than a decade. Given this precedent, there is no reason for the UST to second guess the best interests of creditors, whose voice on the appointment of a trustee must ring loudest. Thus, the Dismissal Motion should be denied, and all objections to relieving Mr. Tantleff from the turnover provisions of Section 543 should be overruled.

Dated: New York, NY
      December 14, 2020

Goldberg Weprin Finkel Goldstein LLP
Proposed Attorneys for the Debtor
1501 Broadway, 22nd Floor
New York, New York 10036
(212) 221-5700

By:    /s/ Kevin J. Nash, Esq.